Bret J. Uhrich, WSBA #45595
Walker Heye, PLLC
1333 Columbia Park Trail, Suite 220
Richland, Washington 99352
Telephone: (509) 735-4444
burich@walkerheye.com

Edwardo Morfin, WSBA #47831
Morfin Law Firm, PLLC
732 N. Center Parkway
Kennewick, WA 99336
Telephone: (509) 380-9999

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF WASHINGTON**

| | |
|---|---|
| CHASE SKARBO,<br><br>Plaintiff,<br>v.<br><br>KEVIN L. BELL, in his individual capacity, KEVIN L. BELL and JANE DOE BELL, a marital community, BENTON COUNTY, and ROBERT GUERRERO, Individually and in his Official Capacity,<br><br>Defendants. | CASE NO.<br><br>COMPLAINT FOR DAMAGES |

# I. PARTIES, JURISDICTION & VENUE

1. Plaintiff Chase Skarbo is a resident of Prosser, Washington and is a citizen of the State of Washington.

2. Defendant Kevin L. Bell is a resident of Pasco, Washington and is a citizen of the State of Washington.

3. Defendants Kevin L. Bell and Jane Doe Bell are a martial community residing in Pasco and are citizens of the State of Washington.

4. Defendant Benton County is a County recognized under Article XI, Section 1 of the Washington State Constitution operating under Chapter 36 of the Revised Code of Washington.

5. Defendant Robert Guerrero is an individual and acting in his official capacity is the Chief of the Benton County Corrections Department, which oversees the operation of the Benton County Jail.

6. The Court has jurisdiction pursuant to 28 U.S.C. § 1331 as this civil action arises under the Constitution, laws, or treaties of the United States and under 28 U.S.C. § 1367 in regard to state law claims which form part of the same case or controversy.

7. Venue in this matter is proper under 28 U.S.C. 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in the Eastern District of Washington.



WALKER HEYE, PLLC
1333 Columbia Park Trail, Suite 220
Richland, WA 99352
P: 509.735.4444
F: 509.735.7140

## II. FACTS

8. In 2022, Plaintiff Chase Skarbo moved to Benton County, Washington to assist her grandparents with daily-living activities after her grandmother was diagnosed with cancer.

9. On or about September 26, 2023, Skarbo was arrested for alleged possession of a controlled substance and was detained in the Benton County Jail prior to conviction.

10. While detained at the Benton County Jail, Skarbo served as detainee trustee for laundry. In order to qualify for Benton County Jail's trustee program, the detainee must be a non-violent offender with no history of discipline while detained.

11. Trustee detainees have more freedom of movement within the jail than non-trustee inmates.

12. Shortly after arriving at Benton County Jail, corrections officer Kevin L. Bell began flirting with Skarbo and using sexual innuendo.

13. After several weeks of engaging in sexually suggestive behavior, on or about December 20, 2023, Bell asked Skarbo to deliver him a mattress at the Officer's station. Upon arriving at the Officer Station, Bell approached Skarbo closely and asked her how long she would be in jail for and when he could be with her. Bell then offered Ms. Skarbo a grape and grinded on her with his groin on her butt from behind when she bent over to grab the grape. He again asked Skarbo when



WALKER HEYE, PLLC
1333 Columbia Park Trail, Suite 220
Richland, WA 99352
P: 509.735.4444
F: 509.735.7140

they could be together because he wanted to "fuck" her. Bell then dismissed Ms. Skarbo.

14. Skarbo left the office and returned to the laundry room.

15. A few hours later that same night, Bell once again called Skarbo up to the third-floor officer breakroom to deliver a towel.

16. Bell exited the bathroom located in the breakroom, with his pants unzipped and penis exposed.

17. Bell asked Skarbo "what are you looking at." Skarbo, not yet noticing Bell's exposed penis, was confused. Bell proceeded to make a motion down towards his genitals.

18. Bell approached Skarbo in the breakroom directing her to touch his penis while he made a masturbating gesture with his hand. Officer Kevin L. Bell told Ms. Skarbo to "hurry and touch it."

19. Skarbo complied with Bell's demand and began rubbing Bell's penis.

20. Bell began groping Skarbo's breast.

21. After approximately 30 seconds, Bell told Skarbo to stop, appearing nervous that he would be caught. Bell told Skarbo that he would find her later.

22. Thereafter, Skarbo attempted to make sure never to be alone in the jail while outside of her pod to avoid being in a situation where Bell could take



WALKER HEYE, PLLC
1333 Columbia Park Trail, Suite 220
Richland, WA 99352
P: 509.735.4444
F: 509.735.7140

advantage of her. However, Bell often looked at her and bit his lip and would mouth that he wanted to "fuck" her. He often asked her to bend over to grab stuff for him.

23. On multiple occasions, Bell would mouth sexual statements to Skarbo, such as "I want to fuck you" and "we need to find a place."

24. During one such incident, Bell entered the laundry room where Skarbo was working and told Skarbo that he was looking for a place where he and Skarbo could have sex before he realized that Skarbo was not alone in the laundry room and that another detainee was present.

25. In January of 2024, Bell took Skarbo to the 304 Storage Pod with another detainee. When the other detainee was not looking Bell told Skarbo that he wanted to "fuck" her or "love" her. Shortly thereafter, Corporal Williams stepped into the 304 Storage Pod and dismissed the inmates.

26. On February 14, 2024, Bell called Skarbo to the Officers Station. Upon arriving, Skarbo found Bell rubbing himself while standing in the doorway. He told Ms. Skarbo that he wanted to ask her to be his valentine.

27. Bell often stepped into Skarbo's cell and told her he was looking for a place for them to have sex. Skarbo's roommate often complained to Skarbo that Bell would step into their cell while they were sleeping and would attempt to wake Skarbo. At the time, Skarbo was on sleep medication and was unable to wake when physically shaken.



WALKER HEYE, PLLC
1333 Columbia Park Trail, Suite 220
Richland, WA 99352
P: 509.735.4444
F: 509.735.7140

28. Skarbo wrote letters to her grandmother, identifying that Bell was trying to have sex with her and that she was afraid.

29. When Skarbo discussed the situation with other detainees, the detainees told Skarbo that she would lose her trustee position if she reported the conduct.

30. Specifically, a detainee who had been in Benton County jail for an extended period of time, Jennifer Evans, told Skarbo that the County would not believe Skarbo ("someone with a drug charge") because Bell received the Officer of the Year award.

31. Additionally, Skarbo had heard Corporal Phillips comment that Bell was "the girl's favorite" officer, leading her to believe that other officers were aware of Bell's inappropriate conduct.

32. Further, officers would frequently remind detainees they could take away their privileges or place them in disciplinary segregation, commonly referred to as "the hole," if they disobeyed orders. Skarbo understood these warnings to be applicable to her circumstances and believed that reporting Bell or outright telling Bell to stop would jeopardize her position as trustee and potentially expose her to disciplinary consequences.

33. Immediately following the assault on December 20, 2023, Skarbo's ability to make authorized calls and communications outside of the jail stopped working for approximately one week. When Skarbo discussed this with other



WALKER HEYE, PLLC
1333 Columbia Park Trail, Suite 220
Richland, WA 99352
P: 509.735.4444
F: 509.735.7140

inmates, it was apparent that this difficulty or disruption was specific to her as other inmates were not experiencing the same problems. Skarbo attributed this to Bell preventing her from telling others since he had previously asked her if she could keep secrets. After Skarbo reported Bell, she experienced a similar inability to make contacts and messages to people outside of the jail, further confirming in her mind that Bell had been the one to interrupt her communication privileges.

34. Out of fear of retaliation, Skarbo did not intend to report on Bell's conduct until she was released from confinement for treatment.

35. After learning from another detainee of similar inappropriate behavior by Bell, Skarbo reported Bell's sexual abuse on February 20, 2024.

36. After Skarbo reported the misconduct, several detainees began harassing her and hounding her for reporting Bell because it disrupted their ability to get Bell to "do stuff for them." This caused Skarbo to have a hard time emotionally and socially while still at Benton County Correctional Center.

37. On March 5, 2024, Bell was arrested for Custodial Sexual Misconduct in the Second Degree.

38. The harassment from other detainees continued when Skarbo was transferred to American Behavioral Health Systems Cozza in Spokane, Washington as part of her Drug Offender Sentencing Alternative (DOSA). Other program



WALKER HEYE, PLLC
1333 Columbia Park Trail, Suite 220
Richland, WA 99352
P: 509.735.4444
F: 509.735.7140

attendees who had been detained at Benton County or had learned of the reporting from others continued to bully and harass Skarbo.

39. The trauma of Bell's assaults was exacerbated because her roommate at ABHS was a transgender female who continuously made sexual advances towards Skarbo before she reported the conduct and the roommate was removed. Even after leaving Benton County jail, Skarbo was still in positions where she was confined and could not protect herself from unwanted sexual advances.

40. After two months at ABHS, Skarbo left the program because she was feeling unwelcome by other patients who continuously harassed and hounded Skarbo for reporting the incident involving Bell, along with the other unwelcome behavior. Skarbo relapsed into daily substance abuse.

41. In November of 2024, Skarbo asked to return to treatment, and began attending weekly individual sessions Substance Use Disorder Professional (SUDP), ten (10) hours of group and ten (10) hours of lecture weekly as well as working with and attending therapeutic community meetings.

42. Skarbo's providers reported seeing success in Ms. Skarbo's ability to cope with the hardships in her life and identifying the issues that triggered her to use. Skarbo described the sexual misconduct by Bell as an incident that exacerbated her PTSD and led her to want to use. Setting her troubles aside, Skarbo moved into the role of Senior Clerk in the Therapeutic Community.



WALKER HEYE, PLLC
1333 Columbia Park Trail, Suite 220
Richland, WA 99352
P: 509.735.4444
F: 509.735.7140

43. Skarbo identified struggling with boundaries – both setting them and letting others know they had crossed them. Skarbo identified the need to set boundaries to protect herself from being taken advantage of as she constantly fell into the habits of being a people pleaser. Skarbo continued to work on improving these areas of weakness, as she described them.

44. On May 9, 2025, Skarbo presented at Oasis Behavioral Health for individualized mental health treatment. Skarbo described feeling “neutral” but reported ongoing symptoms including difficulty making decisions, trouble concentrating, excessive worry, increased irritability, and sleep disturbances. She experienced anxiety symptoms, including difficulty sitting still. As for her PTSD symptoms, Skarbo reported avoiding triggers when possible, experiencing hypervigilance, having intrusive memories, flashbacks, and nightmares about trauma approximately three times a week.

45. Since December of 2025, Skarbo suffered from paralyzing nightmares. She explained that in these nightmares, she was restrained by an individual and was unable to get away. Sometimes she was in a building, sometimes it was visibly jail. Every time, she tried to get away from someone or something. She couldn’t find anywhere to hide or run to. Disturbingly, sometimes she saw Bell. Ms. Skarbo explained that this was not something she struggled with prior to the incident involving Officer Bell.



WALKER HEYE, PLLC
1333 Columbia Park Trail, Suite 220
Richland, WA 99352
P: 509.735.4444
F: 509.735.7140

46. The misconduct by Bell has also dramatically changed Skarbo's perception of interactions with other law enforcement officers and others in positions of authority. On multiple occasions, local law enforcement officers made contact with Skarbo. Each time, the law enforcement officers informed Skarbo that they knew who she was. Skarbo felt as if she was being watched or that the law enforcement officers were attempting to keep tabs on her given that she did not receive citations. This included one incident where a law enforcement officer made contact with her while she was at a gas station and there was no indication of Skarbo committing an infraction or criminal conduct. During more than one of these encounters, law enforcement officers informed Skarbo that she looked like she was doing better. On one occasion, an officer turned off their body camera and apologized to Skarbo for the incident involving Bell. While such contacts were potentially for benign reasons, Skarbo's perception of these contacts based on her previous trauma affected her safety, trust, and ability to feel secure around people in positions of authority.

47. Skarbo continues to struggle with feeling safe and with the fear that the people who are supposed to protect and assist her may not be trustworthy or may not be able to keep her safe. This has made it difficult for her to seek help when she needs it and has created an additional barrier to accessing the very systems and services intended to support her.



WALKER HEYE, PLLC
1333 Columbia Park Trail, Suite 220
Richland, WA 99352
P: 509.735.4444
F: 509.735.7140

48. On December 22, 2025, Bell pleaded guilty on one count of Custodial Sexual Misconduct in the Second Degree.

49. It is further notable that prior to his employment with Benton County, Bell frequently changed jobs in his employment in the fields of security and corrections. From June 2005 to October 2007, Bell worked as a corrections officer for the Arkansas Department of Corrections. From November 2008 to July of 2012, Bell worked as a detention officer for the Maricopa County Sheriff. Bell then worked a series of security jobs before becoming a correctional officer for the City of Taft for nine months in 2014, before joining the Kern County Sheriff's Office.

**Other Incidents Demonstrating A Pattern of Misconduct.**

50. Bell was well known among the female detainees as an officer who would engage in sexual misconduct.

51. During the criminal investigation, a detainee reported that Bell passed the detainee a note that said he would give the detainee a candy bar if she allowed Bell to grab her butt.

52. Another detainee reported that she saw a female detainee eating a candy bar that was not available in the commissary. When asked how she was able to obtain the candy bar, the detainee said she received it from Bell after she allowed Bell to grope her.



WALKER HEYE, PLLC
1333 Columbia Park Trail, Suite 220
Richland, WA 99352
P: 509.735.4444
F: 509.735.7140

53. Bell was known to stop and stare at the female detainees when they were changing clothes, unlike the other officers who would confirm detainee presence with a periphery check.

54. When waking up detainees, Bell would physically touch the detainees on the hip or breasts, instead of verbally.

55. Detainee Jennifer Evans, who had been at the Benton County Jail for an extended period of time, identified Bell as a "trick" who would provide female detainees with candy if they allowed him to grope the detainee.

56. Evans told Skarbo not to report Bell's misconduct as he was in a position of power over Skarbo, won "Officer of the Year", and that Skarbo could lose her trustee position if she reported the misconduct.

57. Victim S.L.W. was subjected to sexual misconduct including digital penetration by Bell while detained at Benton County Jail between January and May of 2022.

58. S.L.W. witnessed Bell grinding on another female detainee in front of the bathroom of the cell pod, visible to the jail's cameras. Shortly thereafter, Bell began ogling S.L.W.

59. Bell began calling S.L.W. up to the officer's third-floor breakroom and offering her candy.



WALKER HEYE, PLLC
1333 Columbia Park Trail, Suite 220
Richland, WA 99352
P: 509.735.4444
F: 509.735.7140

60. Bell continued to engage in increasingly sexual behavior with S.L.W. in the officer's third floor breakroom. S.L.W. saw Bell's penis multiple times and Bell grabbed S.L.W.'s breasts and genitals on 5-10 occasions.

61. During one incident, while S.L.W. was sitting on Bell's lap, Bell digitally penetrated S.L.W. with his fingers through her clothing. This conduct only stopped when they heard the jingle of keys approaching the breakroom.

62. S.L.W. described two incidents where Bell encouraged S.L.W. to caress his penis through his pants. On one of these incidents, Bell gave S.L.W. a Hi-Chew as a reward.

63. Bell told S.L.W. that they needed to find a way to have sex.

64. S.L.W. further identified that Bell smuggled nicotine patches into the jail for her.

65. Bell was further charged with one count of Custodial Sexual Misconduct in the First Degree and one count of Custodial Sexual Misconduct in the Second Degree related to S.L.W.

**Additional Allegations Related to *Monell* Liability.**

66. In addition to the pattern of misconduct by Bell and the evidence demonstrating that other officers were aware of Bell's misconduct towards female detainees, on March 6, 2021, the Benton County Jail was subjected to a Prison Rape Elimination Act Audit conducted by Bruce Kuennen.



WALKER HEYE, PLLC
1333 Columbia Park Trail, Suite 220
Richland, WA 99352
P: 509.735.4444
F: 509.735.7140

67. As set forth in Mr. Kuennen's report, Benton County Jail had a demonstrated lack of investigation and documentation into allegations of sexual abuse and harassment:

> The original statistical information on sexual abuse and harassment allegations included a total of only one case to review. The facility reported that there were 21 allegations in the previous 12 months and that one investigation was completed. No information was provided to explain the nature of the remaining allegations, or whether or how they were investigated.

68. Under Benton County Corrections Policy 606.10, Benton County Jail is required to document and investigate sexual abuse and sexual harassment as follows:

> An administrative investigation, criminal investigation or both shall be completed for all allegations of sexual abuse and sexual harassment (28 CFR 115.22). Administrative investigations shall include an effort to determine whether the staff's actions or inaction contributed to the abuse. All administrative and/or criminal investigations shall be documented in written reports that include a description of the physical and testimonial evidence, the reasoning behind credibility assessments, and investigative facts and findings. Only investigators who have completed Department-approved training on sexual abuse and sexual harassment investigation shall be assigned to investigate these cases (28 CFR 115.71).

69. The report further provided:

> The facility did not provide a policy or other written description of a grievance system at the time of the onsite audit, so there was essentially no grievance system to assess or test. Policies were adopted during the corrective action period, and inmates were effectively notified of the system, but no grievances related to sexual abuse were received by the time of the follow-up visit.



WALKER HEYE, PLLC
1333 Columbia Park Trail, Suite 220
Richland, WA 99352
P: 509.735.4444
F: 509.735.7140

70. Under Benton County Corrections Policy 606.4(d), the PREA coordinator appointed by Benton County Jail was responsible for ensuring that, when designing, acquiring, expanding or modifying facilities, or when installing or updating a video-monitoring system, electronic surveillance system, or other monitoring technology, consideration is given to the Department's ability to protect inmates from sexual abuse.

71. On June 4, 2024, Benton County Jail was subjected to an additional PREA audit. The date of the on-site audit began on December 5, 2023, to December 7, 2023, just days before the sexual assault of Skarbo and while Skarbo was detained at the jail.

72. Once again, Mr. Kuennen's report identified in regard to staff-on-inmate sexual harassment:

| | |
|---|---|
| **114. Provide any additional comments regarding selecting and reviewing sexual abuse and sexual harassment investigation files.** | File documentation was very sparse; led to a finding of noncompliance for a number of standards. |

73. The audit further identified documented deficiencies in the Benton County Corrections investigation process and responsibilities, with Benton County Corrections incorrectly identifying the Benton County Sheriff's Office as being responsible for investigating complaints of sexual misconduct and harassment:

> Facility responses to PREA Pre-Audit Questionnaire indicated that the Benton County Sheriffs Office conducted all investigations. However,



WALKER HEYE, PLLC
1333 Columbia Park Trail, Suite 220
Richland, WA 99352
P: 509.735.4444
F: 509.735.7140

> BCCD policy and interviews at the onsite visit indicated that the BCSO investigated only criminal cases. This policy is also described at the county's website. In practice, the BCCD is responsible for the investigation of administrative (non-criminal) cases of sexual abuse and sexual harassment at the facility.
>
> At the time of the onsite audit, no member of the BCCD staff had received the specialized training required by this standard.

74. The report further identified deficiencies in the system for inmates being able to report misconduct and the employees' responsibilities to document such complaints:

> A review of applicable BCCD policies and procedures indicates that staff are required to report all instances of sexual assault and sexual harassment to their appropriate supervisor. Policies further require that these reports be documented. Of the five investigative files reviewed during the onsite audit, only two included documentation of the initial staff's receipt of incident information or observation of the incident. While staff consistently reported that they were required to document this information, staff reports were not included in the documentation of investigations in three out of five cases.
>
> While the facility policy requires that these reports be submitted to "designated investigators", the process was ill-defined at the time of the onsite audit. In most cases, supervisors at the sergeant level reviewed the incident and made recommendations regarding whether the incidents were substantiated, unsubstantiated, or unfounded. However, the documentation was insufficient to determine to whom this recommendation was made, whether policies and procedures were followed, and whether the steps of the process were completed within the timelines required.
>
> The auditor's review of this evidence leads him to the conclusion that this standard was not met in practice. Facility administrators participated in the development of the following corrective action plan.

75. The PREA audit identified the same deficiencies regarding the staff



WALKER HEYE, PLLC
1333 Columbia Park Trail, Suite 220
Richland, WA 99352
P: 509.735.4444
F: 509.735.7140

and agencies and their reporting duties under the PREA and Benton County Corrections was subjected to a corrective action plan.

76. The audit noted:

> At the time of the onsite visit, there was no documentation that indicated that facility investigators
> • Gathered and preserved direct and circumstantial evidence, including any available physical and DNA evidence and any available electronic monitoring data
> • Interviewed alleged victims, suspected perpetrators, and witnesses
> • Reviewed prior reports and complaints of sexual abuse involving the suspected perpetrator
> • Assessed the credibility of an alleged victim, suspect, or witness on an individual basis
> • Provided a description of the physical evidence and testimonial evidence, the reasoning behind credibility assessments, and investigative facts and findings
> • Documented efforts to determine whether staff actions or failures to act contributed to the abuse
> In the auditor's judgment this evidence indicated that the facility did not meet the requirements of this standard at the time of the onsite visit.

77. According to the report, Benton County Corrections provided no evidence that sexual abuse incident reviews were conducted regarding the investigations of any incident in the year prior to the onsite investigation. Both policies and this standard require such reviews within 30 days of the completion of all investigations, unless the allegations are determined to be unfounded. In the auditor's judgment this lack of evidence indicated that the facility did not meet the requirements of this standard at the time of the onsite audit.

78. Benton County Jail has demonstrated a continuous failure to document



WALKER HEYE, PLLC
1333 Columbia Park Trail, Suite 220
Richland, WA 99352
P: 509.735.4444
F: 509.735.7140

and investigate complaints of sexual misconduct occurring within the facility and these failures continued to occur through the time of Skarbo's detainment, even though notice of such deficiencies was provided by the 2021 audit.

## III. CAUSES OF ACTION

### 42 U.S.C. § 1983 – Monell Liability

79. Plaintiff realleges the allegations above as if incorporated herein.

80. Skarbo as a pretrial detainee had a Fourteenth Amendment right to be free from sexual abuse while detained.

81. Bell engaged in a pattern of sexual misconduct towards female detainees that was observable by monitoring systems within the jail, observable by other officers, and widely known among female detainees.

82. Despite written policies regarding the need to investigate and document complaints of sexual assault and sexual abuse, Benton County has a continuing practice of failing to investigate and document complaints of sexual assault, as well as for providing adequate systems for detainees and staff to report such misconduct.

83. Despite being put on notice of such deficiencies, Benton County failed to remedy these deficiencies and engaged in a longstanding policy, custom or practice of failing to provide for proper reporting, investigation and documentation of sexual misconduct complaints.



WALKER HEYE, PLLC
1333 Columbia Park Trail, Suite 220
Richland, WA 99352
P: 509.735.4444
F: 509.735.7140

84. These deficiencies were objectively unreasonable, or in the alternative, amounted to deliberate indifference, to Skarbo's Fourteenth Amendment right to be free of sexual abuse while detained, causing her to suffer injury.

**42 U.S.C. § 1983 – KEVIN BELL IN HIS INDIVIDUAL CAPACITY**

85. Plaintiff realleges the allegations above as if incorporated herein.

86. Skarbo as a pretrial detainee had a Fourteenth Amendment right to be free from sexual abuse while detained.

87. Bell's sexual assaults and harassment of Skarbo was objectively unreasonable, or in the alternative, deliberately indifferent to Skarbo's right to be free of sexual abuse while detained, causing her to suffer injury.

**42 U.S.C. § 1983 – ROBERT GUERRERO IN HIS INDIVIDUAL CAPACITY**

88. Plaintiff realleges the allegations above as if incorporated herein.

89. Skarbo as a pretrial detainee had a Fourteenth Amendment right to be free from sexual abuse while detained.

90. Guerrero as Chief of Benton County Corrections had a duty to prevent the policies, customs or practices of Benton County from facilitating the sexual assault and harassment of Skarbo, impairing her right to be free of sexual abuse while detained.

91. The long standing and known deficiencies in Benton County



WALKER HEYE, PLLC
1333 Columbia Park Trail, Suite 220
Richland, WA 99352
P: 509.735.4444
F: 509.735.7140

Corrections' inmate and staff reporting, investigation, and documentation of sexual misconduct complaints was objectively unreasonable, or in the alternative, deliberately indifferent to Skarbo's Fourteenth Amendment rights, causing her to suffer injury.

**BENTON COUNTY – NEGLIGENCE**

92. Plaintiff realleges the allegations above as if incorporated herein.

93. Benton County has an affirmative and non-delegable duty to ensure the health, welfare, and safety of all detainees within their custody and control.

94. Benton County further has a take charge duty under § 319 of the (Second) Restatement of Torts and has a special relationship requiring that the County take reasonable care in protecting Skarbo from criminal conduct of third-parties, including County employees acting outside the course and scope of their duties.

95. Benton County breached this duty of care by failing to adequately protect Skarbo from sexual assault and sexual harassment, causing her injury.

**BENTON COUNTY – NEGLIGENT SUPERVISION**

96. Benton County has a duty as an employer to take reasonable care that the tasks, premises, and instrumentalities of employment are not used by its employees to engage in criminal conduct against third-persons.

97. Benton County breached this duty of care by failing to adequately



WALKER HEYE, PLLC
1333 Columbia Park Trail, Suite 220
Richland, WA 99352
P: 509.735.4444
F: 509.735.7140

supervise Bell, resulting in injury to Skarbo.

**BENTON COUNTY - WASHINGTON LAW AGAINST DISCRIMINATION – SEX DISCRIMINATION**

98. Plaintiff realleges the allegations above as if incorporated herein.

99. Pursuant to RCW 49.60.030(1), Skarbo had a right to be free from discrimination because of her sex, a right that is "included but not limited to" situations listed in the subsections of the statute.

100. Benton County and its employees subjected Skarbo to sexual assault and sexual harassment on the basis of her sex.

101. As a direct and proximate result of Benton County's discrimination, Skarbo suffered general and special damages, expenses, and losses in an amount to be proven at trial.

## IV. PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray as follows:

1. A judgment for the Plaintiff's economic and non-economic compensatory damages;
2. Judgment against all Defendants jointly and severally;
3. Special and general damages in an amount to be proven at trial;
4. Reasonable attorney's fees and costs as allowed by contract or law;
5. Punitive damages pursuant to 42 U.S.C. § 1983;



WALKER HEYE, PLLC
1333 Columbia Park Trail, Suite 220
Richland, WA 99352
P: 509.735.4444
F: 509.735.7140

6. Pre-judgment and post-judgment interest;

7. For all other relief the court deems just and equitable.

## V. DEMAND FOR JURY TRIAL

Plaintiffs respectfully request a trial by jury on all appropriate issues raised in this Complaint.

DATED this 10th day of November, 2026.

*/s/ Bret Uhrich*
Bret Uhrich, WSBA #45595
Walker Heye, PLLC
1333 Columbia Park Trail, Ste 220
Richland, WA 99352
Telephone: (509) 735-4444
Fax: (509) 735-7140
E-mail: buhrich@walkerheye.com
Attorneys for Plaintiff

*/s/ Edwardo Morfin*
Edwardo Morfin, WSBA #47831
Morfin Law Firm, PLLC
732 N. Center Parkway
Kennewick, WA 99336
Telephone: (509) 380-9999
Email: Eddie@MorfinLawFirm.com